UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X
UNITED STATES,                                      08 Cr. 410

                Plaintiff,            OPINION and
                                                    ORDER
   -against-

VICTOR MARTE-ESTRELLA,

                Defendant.
------------------------------------------X

A P P E A R A N C E S:

Attorney for Plaintiff

JOON H. KIM
Acting United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007
By: Adam S. Hobson, Esq.

Attorney for Defendant

FOY & SEPLOWITZ LLC
105 Main Street
Hackensack, NJ 07601
By: Jason E. Foy, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/1/17

**Sweet, D.J.**

Defendant Victor Marte-Estrella ("Marte-Estrella" or the "Defendant") is accused of four violations of supervised release as charged in the violation report dated May 25, 2017. See Amended Petition of United States Probation Office dated May 25, 2017 (the "Petition"). For the reasons set forth below, Defendant is found guilty by a preponderance of the evidence of each of the four specifications.

**Prior Proceedings**

On August 25, 2008, while on supervised release for a 2005 conviction for conspiracy to distribute heroin, Defendant pleaded guilty to one count of distribution and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). See Dkt. No. 21 at 5. Defendant was sentenced to 60 months' imprisonment followed by four years' supervised release, id. at 12, and was released from prison and commenced his term of supervised release on July 5, 2013, see Petition at 2.

1

On May 25, 2017, Defendant was charged with seven violations of supervised release, of which the Government elected to proceed on four specifications[1]:

- Specification One: "On or about July 22, 2016, in Fort Lee, New Jersey, the supervised releasee committed a state crime, unlawful possession of a handgun, in violation of New Jersey Statute 2C:39-5B, a second degree crime, in that the supervised releasee knowingly possessed a Smith & Wesson .40 caliber handgun without first having obtained a permit to carry." Petition at 2.

- Specification Two: "On or about July 22, 2016, in Fort Lee, New Jersey, the supervised releasee committed a state crime, certain persons not to have weapons, in violation of New Jersey Statute 2C:39-7B(1), a second degree crime, in that the supervised releasee having been convicted in New Jersey or elsewhere of the crime of distribution of narcotics, possessed a .40 caliber Smith & Wesson caliber handgun." Petition at 2.

- Specification Three: "On or about November 2, 2016, in Fort Lee, New Jersey, the supervised releasee committed a New Jersey state crime, knowingly or purposely manufacture, distribute, dispense or possess with the intent to manufacture, distribute or dispense one (1) kilo of fentanyl, in violation of New Jersey statute 2C:25-5A(1), a second degree crime, in that the was in possession of one (1) kilo of fentanyl." Petition at 3.

- Specification Four: On or about November 2, 2016, in Fort Lee, New Jersey, the supervised releasee committed a New Jersey state crime, transport or possess property known or which a reasonable person would believe to be derived from criminal activity with the intent to facilitate or promote the criminal activity, in violation of New Jersey Statute 2C:21-25A, a third degree crime in that $14,000 was recovered from a hidden compartment and $2,700 found in a

---

[1] Specifications Five, Six, and Seven relate to Defendant's March 2017 arrest in Westchester County, New York. See Petition at 4.

bag in the back seat of a vehicle driven by the releasee." Petition at 3.

An evidentiary hearing was held on September 25, 2017, after which the parties submitted post-hearing briefing. Arguments in summation were heard on November 8, 2017.

**Factual Findings**

The following facts surrounding the charged violations were adduced at the evidentiary hearing held on September 25, 2017, through witness testimony and submitted evidence.[2] Two witnesses testified on behalf of the Government: Detective T.J. Cullen ("Cullen") and Detective Bryan Drumgoole ("Drumgoole"), both from Fort Lee New Jersey Police Department. Defendant presented no evidence. The testimony of the police officers is found credible.

a. July 22, 2016

On the morning of July 2, 2016, Cullen was conducting a patrol check of the Skyview Motel in Fort Lee, New Jersey, a

---

[2] References to "Tr." are to portions of the transcript from the September 25, 2017, evidentiary hearing. References to "GX" are to Government exhibits offered into evidence during the same hearing.

3

location known as a "high crime, high drug trafficking" area. Tr. at 5-6. Cullen saw a man leaning into the front passenger window of a Mercedes SUV; as the man came out of the Mercedes, he appeared to be holding something "at his chest." Id. at 7. While still holding the object to his chest with both hands, the man turned to open the front door of a Honda Pilot parked next to the Mercedes. Id. at 7, 36. The man opened the Honda Pilot's front door, leaned into the driver's seat area, remained there for a few seconds, and then came out empty-handed, closed the door, and walked off with a female. Id. at 7, 38-39. The Mercedes SUV drove out of the parking lot and the man went into one of the motel rooms. Id. at 8.

Cullen proceeded to the front desk and inquired from the clerk about the guest observed in the parking lot; the clerk showed Cullen a copy of the guest's driver's license, which indicated the man observed was Defendant. Id. at 9. Cullen knew Defendant's name from previously assisting the Drug Enforcement Agency ("DEA") in executing search warrants involving Defendant, one of which involved the search of a vehicle equipped with a hidden compartment. Id. at 9-10. Cullen also learned from other police officers that when they had stopped the previously

observed Mercedes SUV, that driver had initially denied being at the Skyview Motel. Id. at 8.

About an hour later, Defendant returned with the woman to the Honda Pilot and opened the driver's side door using a set of keys in his possession. Id. at 8, 44. Cullen pulled up in his vehicle behind the Honda Pilot and identified himself as a police officer. Id. Cullen asked Defendant if Defendant had met anyone in the motel parking lot earlier that day, which Defendant denied doing; Defendant also stated that the Honda Pilot belong to his friend "Jose." Id. at 11. Cullen asked for consent to search the Honda Pilot on video tape, and Defendant consented. Id. at 12.

After searching the Honda Pilot, Cullen found no items in the front seat where Defendant had been previously leaning, although Cullen did locate a hidden compartment in the center console under the cup holders, inside which was hidden a .40 caliber handgun loaded with ammunition.[3] Id. at 13, 15, 18; see

---

[3] Cullen testified that he had professional experience with hidden compartments in cars and, through that experience, knew that center consoles were popular locations for hidden compartments. See Tr. at 13. No evidence was presented that showed forensic evidence connecting Defendant to the handgun. See id. at 46-47.

5

also GXs 4-5. In the car, Cullen also found a summons for a black Acura MDX with New Jersey license plates. Id. at 20. Cullen then arrested Defendant, who did not express surprise at the presence of a handgun in the car. Id. at 17-18. The license plate for the Acura MDX was entered into the Automatic License Plate Reader ("ALPR") database system. Id. at 21.

### b. November 1, 2016

On November 1, 2016, the New Jersey police received an alert from the ALPR system that the Acura MDX was in the area of the George Washington Bridge, driving from New Jersey to New York. Id. at 22. Drumgoole and other officers went to the George Washington Bridge and, upon receiving a second alert that the car was returning to New Jersey from New York, spotted the Acura MDX crossing the bridge; Drumgoole observed that the car failed to maintain its lane, at which point Drumgoole turned on his lights and pulled the Acura MDX over. Id. at 23, 54-55. Defendant was the driver of the Acura MDX and was its sole occupant. Id. at 56.

Upon approaching the car, Drumgoole observed that the Acura MDX was a single-key ignition, that there were two cell phones,

6

and an "overwhelming odor of air freshener." Id. Defendant appeared nervous and stated that he was coming from work, although he could not identify the street on which he worked. Id. at 57. Police asked for consent to search the vehicle, which Defendant declined. Id. at 57, 59. Police proceeded to summon a K9 unit, which gave a positive alert for the odor of narcotics. Id. at 59. Police seized the vehicle. Id.

On November 2, 2016, after receiving a search warrant, Drumgoole, Cullen, and other officers searched the Acura MDX. Id. at 60. The police located a hidden compartment in the Acura MDX under the center console, where inside they discovered a kilogram-sized shrink-wrapped bag of a white powdery substance and a brown paper bag filled with approximately $14,000 in United States currency. Id. at 24-25, 60-61. On the Acura MDX's backseat, the police found a Louis Vuitton bag with a stack of approximately $2,000 in United States currency, separated into thin stacks of rubber-banded bundles in different dimensions. Id. at 61. The vehicle also contained about nine cellphones and a black jacket with a small bag of white powder. Id. at 61-62.

The North Regional Laboratory of the New Jersey State Police Office of Forensic Scientists in Little Falls, New Jersey

7

analyzed the bags of power found in the Acura MDX. See GX 8. According to the lab results, the white powder found in the hidden console compartment was approximately 999.1 grams of "para-Fluoroisobutyryl fentanyl," which is a "positional isomer of p-FBF," but could not determine the substance from the bag found in the black jacket.[4] See id.

**Applicable Standard**

Pursuant to 18 U.S.C. § 3583(e)(3), the burden of proof in proving a violation of supervised release is a preponderance of the evidence. See 18 U.S.C. § 3583(e)(3); Fed. R. Crim. P. 32.1(d); Johnson v. United States, 529 U.S. 694, 700 (2000). During a hearing for violations of supervised release, a Defendant is entitled to written notice of the violation; disclosure of the evidence against him; an opportunity to appear, present evidence and question any adverse witness; and an opportunity to make a statement and present any information in mitigation. See Fed. R. Crim. P. 32.1(b)(2).

---

[4] The parties have stipulated to the authenticity of the lab report. See Letter of Adam S. Hobson dated Sept. 22, 2017, at 4, Dkt. No. 49.)

## Defendant is Guilty of the Four Specifications

a. Specifications One and Two

Under Specifications One and Two, Defendant is charged with violating New Jersey law that makes it illegal to possess a handgun without a license or to possess a handgun after being convicted of a drug trafficking crime. See N.J.S. §§ 2C:39-5(b), 7(b). Under these statutes, the Government must prove that: (1) there was a handgun; (2) the Defendant knowingly possessed the handgun, and (3) the Defendant was not allowed to possess the handgun, either because he did not have a permit or because he had been convicted of a controlled substance offense. See id. New Jersey law presumes that a person does not have a permit for a handgun unless otherwise established. See N.J.S. § 2C:39-2(b). New Jersey also has a statutory presumption that a gun found in a vehicle is presumed to be in the possession of the occupant of the vehicle. See N.J.S. § 2C:39-2(a); see also State v. Pratt, No. A-5676-03T4, 2007 WL 92778, at *5 (N.J. App. Div. Jan. 8, 2007).

Defendant has challenged only the second element of these Specifications: that the Government has not proven by a

preponderance of the evidence that Defendant knowingly was in possession of the gun. See Def.'s Br. at 7, Dkt. No. 53. It is therefore undisputed that Cullen found a handgun in the Honda Pilot and for which Defendant did not possess a license and that Defendant has a prior conviction for a controlled substance offense.

Evidence establishes by a preponderance of the evidence that Defendant knowingly possessed the handgun. First, under New Jersey's statutory regime, it is permitted, but not required, to infer that a gun found in a vehicle is in the possession of the occupant of that vehicle. N.J.S. § 2C:39-2(a). Defendant urges that this presumption not be applied. However, New Jersey's Supreme Court has found that these handgun presumptions are in keeping with the "comprehensive regulatory program" laid out by that Legislature "against the prevalence of unlawful possession of firearms." Id. at 499. The presumption is available, and Defendant has not presented availing arguments as to why it should not be used. See State v. Ingram, 98 N.J. 489, 498 (1985) (stating that the statutory presumptions under 2C:39-2 "may be permitted . . . until the defendant comes forward with some evidence to the contrary"). As such, the presumption will be applied.

Additional facts adduced support the presumption and Defendant's requisite knowledge. Defendant returned to the Honda Pilot and unlocked the car with keys in his possession, which indicates the vehicle was in his control. Cullen observed Defendant previously holding something in his hands before going into the Honda Pilot and emerging empty-handed, which suggests Defendant knew something was in the car larger than the summons also recovered from the car; Defendant's argument that a .40 caliber handgun could not have been effectively concealed in Defendant's hands while walking between the two cars does not subtract from this conclusion. Defendant lied to police officers about meeting someone in the parking lot earlier in the day and expressed no surprise at the emergence of a loaded handgun from a hidden compartment in the car he was about to drive. Taken together, these facts combined with the statutory presumption permit a finding of knowledge.

Accordingly, based upon the evidence presented, the preponderance of the evidence establishes that Defendant is guilty of the allegations in Specifications One and Two.

11

b. Specifications Three and Four

Under Specifications Three, Defendant is charged with violating New Jersey Statute Section 2C:35-5(a), which requires the Government to show by a preponderance of evidence that: (1) more than one ounce of fentanyl isomer was found in Defendant's car; (2) that Defendant possessed the fentanyl isomer; (3) Defendant intended to manufacture, distribute, or dispense the fentanyl; and (4) Defendant acted knowingly or purposely.[5] See N.J.S. § 2C:35-5(a). New Jersey law permits possession to be actual or constructive when "the circumstances permit a reasonable inference that he has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time." State v. Spivey, 179 N.J. 229, 237 (2004) (citation omitted).

Under Specification Four, Defendant is charged with violating New Jersey Statute Section 2C:21-25(a), which requires the Government to show by a preponderance of the evidence that: (1) Defendant transported or possessed property; and (2) Defendant knew, or that a reasonable person would believe, that

---

[5] Schedule II of the New Jersey Controlled Substance Act classifies fentanyl, along with "isomers, esters, ethers, salts, and salts of isomers, esters, and ethers" of fentanyl, as a controlled dangerous substance. N.J.S. § 24:21-6(d)(6).

12

the property was derived from criminal activity. See N.J.S. § 2C:21-25(a). Under N.J.S. § 2D:21-26, knowledge may be inferred where the property is transported or possessed in a fashion inconsistent with the ordinary or usual means of transcription of possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property. See N.J.S. § 2D:21-26.

Defendant disputes two aspects of the Government's case. First, Defendant argues that the Government has not met its burden in showing that the substance found in the Acura MDX was fentanyl isomer, specifically noting that the lab reports label the narcotic a Schedule I drug. See GX 8. While a correct reading of the report, it is also irrelevant: the lab report sufficiently establishes that the substance found was fentanyl, a controlled substance that would qualify as a violation of Section 2C:35:5(a), regardless of whether it was then classified as a Schedule I or Schedule II drug. See N.J.S. § 2C:35-5(b)(4).

Defendant also argues that the Government has not proven either that Defendant knowingly or purposefully possessed the fentanyl with an intent to distribute or that Defendant knew or

13

should have believed that the United States currency was from criminal activity. Contrary to Defendant's contentions, the evidence establishes both of these points. Defendant was the only person in the Acura MDX, a car linked to Defendant by the summons found in the earlier Honda Pilot. The drugs were hidden in a compartment identical to the one found in the Honda Pilot previously driven by Defendant and were found proximate to thousands of dollars of currency bundled in an unorthodox fashion. Nine cell phones were found in the Acura MDX. Together, these create the strong, unrebutted inference that Defendant knew the items were present and that they were connected to illegal activity; these facts are most logically explained by participation in drug distribution. While facts like the strong presence of air freshener smell or Defendant's nervous disposition would not themselves be sufficient to meet the Government's burden, they do not counter the inference and, taken with the rest of the adduced evidence, support the Government's case.

Accordingly, based upon the evidence presented, the preponderance of the evidence establishes that Defendant is guilty of the allegations in Specifications Three and Four.

14

## Conclusion

For the foregoing reasons, Defendant is guilty of Specifications One, Two, Three, and Four.

Counsel are instructed to meet and confer to propose a date to sentence Defendant for his supervised release violations and a schedule for submissions of sentencing memoranda.

It is so ordered.

**New York, NY**
**December /, 2017**

_____
ROBERT W. SWEET
U.S.D.J.

15